UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:24-cr-00003 |
| : | |
| AUSTIN LEE HALE : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL**

A jury convicted Austin Hale of one count of transmitting a threat in interstate commerce, in violation of 18 U.S.C. § 875(c). Hale moves for judgment of acquittal on a single ground: that the evidence was insufficient to show the threatening message was transmitted in interstate commerce. Because substantial evidence viewed in the light most favorable to the government proves that Hale's communication crossed state lines, the Court should deny the Motion.

**I.   Background**

The relevant facts are not in dispute.

On January 8, 2024, Hale logged onto the internet from his home in Gate City, Virginia and sent a threat to Ballad Health, a Tennessee company. Tr. 5:4–9; 60:18–20 (attached hereto as Exhibit A). He accessed Ballad Health's "Contact Us" page, which includes a fillable form to submit a message and selected from a drop-down list "Johnson City Medical Center"" as the location to which he desired to send his communication. *Id.* at 9:16–20; 22:3–25; 23:8–16; 25:18; *see also id.* at 60:10–12 ("[Hale] said he sent it to the people at Johnson City.") He wrote the threat that he was "gonna walk into [a Ballad

1

Health] hospital and shoot the staff[] . . . ." Gov't Trial Exs. 7, 13 (attached hereto as Exhibits B and C). That message was routed to a server owned by SalesForce in Ashburn, Virginia. Tr. at 40:19–25; 41:1. Hale received a confirmation email from Ballad Health that his message had been submitted and a Ballad Health Customer Advocate would respond. *Id.* at 73:3–23; 75:4–14; Gov't Trial Exs. 2, 3 (attached hereto as Exhibits D and E).

Brad Folck, Director of Ballad Health's Consumer Contact Center, testified he first received Hale's threat the morning of January 9, 2024, at his office in Johnson City, Tennessee. Tr. at 8:7–25; 21:15–17. He explained that the "Contact Us" portion of Ballad Health's webpage is hosted by Salesforce. *Id.* at 23:17–23. When a person submits a communication to Ballad Health via the company's "Contact Us" page, Folck's office automatically receives an email in Tennessee indicating that a new case has been created. *Id.* at 24:1–18. He explained the employees who receive the automatically-generated email then log into the Salesforce platform from Tennessee to access/download the communication, which is precisely what he did. *Id.* at 18:1–19; 21:6–17; 24:1–18.

In short, Hale does not argue he did not send the threat. And the parties agree that when Hale electronically sent the threat, he did so from Virginia and the threatening communication was first sent to a server in Virginia where it stayed until it was read/downloaded by Folck on his computer in Tennessee.

II.   **Legal Standard**

"A defendant challenging the sufficiency of the evidence to support his conviction bears 'a heavy burden.'" *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997).

2

That is because a jury verdict must be upheld if, "viewing the evidence in the light most favorable to the government, it is supported by substantial evidence." *United States v. Gillion*, 704 F.3d 284, 294 (4th Cir. 2012) (citation omitted). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* (citation omitted).

### III.  Argument

This case presents an important legal question of first impression in the Fourth Circuit: whether a threat electronically sent by a defendant that is first routed to an *intra*state server, before being downloaded/read by the recipient from an *inter*state server, satisfies the jurisdictional requirement of 18 U.S.C. § 875(c).  This Court should hold it does.

#### A. The Relevant Inquiry is the Actual Path of Transmission.

Section 875(c) states: "Whoever transmits in interstate or foreign commerce any communication containing any threat [to kidnap or injure another] …" is guilty.  18 U.S.C. § 875(c).

In applying the interstate requirement to Hale's case, the parties agree on much.

First, the government and Hale agree on the definition of "transmit."  Although the Fourth Circuit has not provided an exhaustive definition of "transmits in interstate commerce," it has held that a threat that crosses state lines constitutes "transmission in interstate commerce" as a matter of law.  *United States v. Darby*, 37 F.3d 1059, 1066–67 (4th Cir. 1994); *United States v. White,* 810 F.3d 212, 228–29 (4th Cir. 2016).  This Court correctly instructed the jury on that point, and Hale did not object.  *See* ECF No. 191 at 25,

3

Jury Instruction No. 20 ("A communication is transmitted in interstate commerce if it travels across state lines . . . .").

Second, as the Fourth Circuit has held, the parties agree the defendant did not need to know or intend for the threatening communication to move in interstate commerce. *Darby*, 37 F.3d at 1067. Indeed, Hale's Rule 29 Motion concedes that Hale's intent or knowledge of whether his threat would cross state lines is irrelevant. Brief at 7–8, ECF No. 188. And Hale's proposed jury instruction at trial likewise conceded as much. *See* ECF No. 187 at 1 (requesting judge to instruct jury that the third element of § 875(c) is that "the threat was made in interstate commerce.").

The parties also agree on one more component of the analysis. As Hale correctly puts it: "the communication's actual path is what is relevant to the interstate commerce elements of 18 U.S.C. § 875(c)." Brief at 8, ECF No. 188. In other words, the focus is on: where did the threat go?

It is here where the parties start to disagree on two fronts, one in a legal sense (what degree of causation is required) and one in a factual sense (did the threat ever cross state lines). The government addresses each in turn.

### i.   Either proximate causation or but-for causation applies.

The Fourth Circuit has not held whether the defendant must have directly caused the threat to cross state lines without first interfacing with any *intra*state point of contact or making any other stopover on its *interstate* travels, proximately caused the threat to cross state lines, or be the "but-for" cause of the threat crossing state lines (i.e., at some point, the threat crossed state lines).

4

Hale's brief is not clear on his position regarding causation. In parts of his brief, it appears Hale wants the Court to adopt the first causation standard: the defendant must have caused the threat to travel *inter*state as its first "stop" (without first interfacing with any *intra*state point of contact). For example, he says "Hale's computer in Gate City, Virginia only transmitted his message to Ashburn, Virginia." Brief at 8. The government will refer to this is "one-stop causation." Hale cites no case for his one-stop causation theory, nor is there any doctrinal support for it, and this Court should reject it. *See White*, 810 F.3d at 228 ("There is no dispute Appellant was in Mexico and MW in Virginia when the e-mails were sent; if he sent them, the foreign commerce element is clearly satisfied.").

But in other parts of his brief, Hale seems to concede that if his threatening message had been "automatically transmitted outside the state of Virginia by interstate servers," then the jurisdictional element would have been satisfied. Brief at 2. This seems to suggest Hale supports at least a proximate causation theory for interstate nexus.

This Court should reject the one-stop causation approach and apply either proximate cause or but-for causation. In the government's view, the better answer is that but-for causation applies: did the threat travel in interstate commerce as part of its transmission? If so, the jurisdictional element is met. But under either but-for causation or proximate causation, there was ample evidence to support the jury's verdict.

A plain reading of the statute supports but-for causation. The Oxford English Dictionary defines transmit as "to cause (a thing) to pass, go, or be conveyed to another

5

person, place, or thing."[1]  Merriam-Webster defines transmit as "to send or convey from one person or place to another" and "to cause or allow to spread," and "to cause . . . to pass."[2]  In each of these definitions, transmit includes both the initial act of passing/spreading, as well as causing or allowing a thing to pass/spread until it reaches its destination, thus contemplating further transmission beyond the first stop.

Applying the spirit of these definitions, courts have applied but-for causation to the interstate requirement.  Of course, the most straightforward cases are where the transmission path of the threatening communication went directly out of state.  For example, in the case cited by Hale in his Motion, *United States v. Kammersell*, 196 F.3d 1137, 1139 (10th Cir. 1999), the Tenth Circuit held that a bomb threat communicated through the Internet from a Utah resident to another Utah resident was sufficient to sustain federal jurisdiction under § 875(c) because the message sent by the defendant was first routed to an Internet server in Virginia before being rerouted to the recipient's computer in Utah.  *See also United States v. Jeffries*, No. 3:10-CR-100, 2011 WL 13186518, at *13 (E.D. Tenn. May 24, 2011).[3]

---

[1]     https://www.oed.com/dictionary/transmit_v?tab=meaning_and_use#17964788

[2]     https://www.merriam-webster.com/dictionary/transmit

[3]     "[I]n the present case, 18 U.S.C. § 875(c) makes it an offense to transmit material—a 'communication' containing a 'true threat'—in interstate commerce. . . . [The defendant] transmitted material—in this case, a video—into interstate commerce.  The fact that the Video passed through YouTube's and Facebook's servers does not mean that the Video did not also reach the Eastern District of Tennessee. The receipt of the Video by persons in the Eastern District of Tennessee . . . demonstrates that the Video was transmitted in this District . . . . ." *Id.* (emphasis added)

6

But courts have also found jurisdictional nexus even when the defendant's actions and the threat's initial movement were all *intra*state, so long as a recipient read/received the threat *inter*state.  In *United States v. Tanner*, 26 F. App'x 469 (6th Cir. 2001), for example, the defendant placed a call from Ohio to his in-state attorney on his Ohio phone number. *Id.* at 470.  The defendant left a voicemail on the attorney's cell phone, which the attorney checked while he was in Alabama. *Id.*  The court held that a rational juror could have found the interstate commerce element beyond a reasonable doubt in part because the evidence showed that the defendant made the call from Ohio and the attorney received it in Alabama. *Id.* at 472.[4]  It did not matter that the call was routed out of state or that the defendant did not directly cause the recipient to retrieve the threatening message out of state.

*United States v. Francis*, 975 F. Supp. 288, 291 (S.D.N.Y.1997), *rev'd on other grounds,* 164 F.3d 120 (2d Cir.1999), is likewise instructive.  Francis left threatening voicemails when he made calls from California to another telephone number in California. *Id.* at 290.  A call-forwarding service forwarded the voicemails to the recipient in New York on his New York telephone number. *Id.*  The recipient retrieved the messages by dialing into his voicemail. *Id.* at 291.  Francis argued that Section 875(c)'s jurisdictional predicate was not satisfied, because he did not "cause" the transmission of the calls over

---

[4] In *Tanner*, the potential first stop, either the call set-up facility or the voicemail message storage facility, was also out of state. *Id.*  However, the court separately highlighted both the communication's path through the out-of-state set-up/voicemail facilities and the out-of-state receipt. *Id.*  If only the first stop mattered, in other words, if the sender's transmission ended at that first stop set up or voicemail storage facility, the recipient's location would have been irrelevant. *Id.*

7

state lines, and that the action of the call-forwarding service, as an intervening cause of the interstate transmission of his message, vitiated federal jurisdiction. The court rejected the argument, holding:

> Adoption of [the defendant's] theory that the telephone company's actions undermine the interstate nature of the transmission would defeat federal jurisdiction over virtually any offense charged under § 875(c). Even in the absence of a call-forwarding service, an interstate telephone call is transmitted across state lines by telephone companies, not the defendant. Francis advances no authorities that support his novel proposition. Indeed, the case upon which Francis most heavily relies strongly suggests that the manner in which the communication facility operates in conveying a message is irrelevant to determining jurisdiction where, as here, the parties to the communication were located in different states.

*Id*.

In *United States v. Whiffen*, 121 F.3d 18 (1st Cir. 1997), a defendant in New Hampshire placed a phone call to an insurance company in New Hampshire to dispute a collection claim. *Id.* at 20. The call escalated and was transferred by a third party to a manager in Florida. *Id.* The defendant then communicated his threat to the manager in Florida. *Id.* The First Circuit held that the threat was transmitted in interstate commerce and it did not matter that the defendant's actions were all intrastate.

Put simply, the law does not require one-stop causation. Instead, the law focuses on the transmission path of the threatening communication and asks whether the threat did in fact cross state lines during the course of the transmission, tantamount to a but-for causation requirement. Whether the communication facility causes the message to first pause at an intrastate location before ultimately conveying to an out-of-state recipient is irrelevant so long as the recipient receives the message in another state.

8

If the Court rejects but-for causation, it should adopt a proximate causation theory rather than a one-stop causation theory. Under proximate causation, liability attaches when the transmission is foreseeable. *See United States v. Kelner*, 534 F.2d 1020, 1022–23 (2d Cir. 1976). As discussed below, even under a proximate causation theory, the jury had substantial evidence to find that Hale's threat crossed state lines and that the transmission path was foreseeable.

### ii.   Hale caused the threat to cross state lines to Ballad Health, the recipient.

The only remaining areas of disagreement are whether the threat actually crossed state lines, and relatedly what constitutes the communication's ultimate destination. The issues appear to be mixed questions of law and fact.

Hale contends the transmission path ended at the server in Virginia. He claims he sent the threatening communication to an *intra*state server, and according to him, the threat "never traveled beyond Virginia," (i.e., it did not cross state lines). Brief at 7. In Hale's self-serving view of the facts, the threat never left the intrastate server.

Tellingly, Hale concedes that if the Virginia server automatically forwarded the threatening communication to Ballad Health employees in Tennessee, the threat would have traveled interstate. Brief at 8. But in his view, because the Virginia server "only" automatically told the recipient in Tennessee to access or download the message from the Virginia server onto the Tennessee device — instead of automatically forwarding the contents of the threatening communication — the interstate requirement is not met. Brief at 5. In other words, Hale draws a distinction between an intrastate server that forwards

9

his message out of state versus an intrastate server that asks an out-of-state recipient to download/read the message.

For purposes of interstate nexus, this is a distinction without a difference, and one that if adopted would lead to absurd results with far-reaching implications. In today's highly digital world, users are frequently invited to log into voicemail, click on hyperlinks, access portals, or otherwise listen to, view, or download content from a server, rather than being sent the content directly. There are clouds hosting all sorts of information for users to access. There are also email platforms where users must download the email and sharepoint sites where users download content. Indeed, anytime someone is sent an email over Gmail for example, the recipient is technically retrieving the email by clicking on the link in his/her inbox. *See Reno v. Am. Civil Liberties Union,* 521 U.S. 844, 851 (1997); *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 605 (E.D. Va. 2002); *see also Hately v. Watts*, 917 F.3d 770, 792 (4th Cir. 2019) ("When the recipient chooses to view the email via a web browser or application on a computer, smartphone, or other internet-connected device, one of the web-based email service's servers sends a copy of the message to the user's device for the user to view through the browser or application."). In all of those circumstances, the sender of the materials has transmitted them and caused them to be conveyed to the terminal where the recipient accesses and views them; so consistent with a straightforward definition of the term "transmit," the sender's transmission of the message continues at least up to the location where a recipient physically reviews the message. *See Rene v. G.F. Fishers, Inc.*, 817 F. Supp. 2d 1090, 1096–97 (S.D. Ind. Sept. 16, 2011) ("Insofar as an email message waiting to be downloaded had yet to travel the

10

channel between server and local computer, it remained in temporary, intermediate storage incident to transmission. Similarly, inasmuch as an email waiting in an inbox has yet to be accessed by the addressee, even though it may be kept after viewing only on the regional server, it too has yet to travel to its ultimate destination."); *Verizon Online Servs., Inc.*, 203 F. Supp. 2d at 606 ("However, e-mail transmitted to an ISP subscriber is processed and stored on the ISP's e-mail computer servers. The e-mail server is located in a discrete geographic location.  An e-mail server processes every e-mail that is addressed to the ISP's customer.  In other words, once the e-mail is transmitted, it must first pass through the ISP's computer server to reach *its ultimate destination—the subscriber's computer.*" (emphasis added)); *cf. Hately v. Watts*, 917 F.3d 770, 784–85 (4th Cir. 2019) ("But previously opened and delivered emails . . . already have been 'transmitted' to the recipient and therefore no longer are 'in the middle' of transmission.").  So when someone sends an email or a social media message, they have transmitted it to that recipient and the physical location where that recipient views it, even if, as a technical matter, the communication company responsible for facilitating the transmission has stored the message on an intrastate server and the recipient is simply accessing the stored message. *See Cruz Lopez v. Pena*, No. 2–12–CV–165–J, 2013 WL 819373 (N.D. Tex. Mar. 5, 2013) ("Contrary to [the party's] argument that transmission ends when an email enters the addressee's email account, whether an email has been retrieved or opened by the addressee (not whether it has made its way to an inbox) is the widely-recognized determinant of when it is no longer in 'intermediate storage ... incidental to the electronic transmission thereof[]' . . . . Once opened by the addressee, transmission is complete.").

In contrast, Hale's logic would insulate criminals who transmit their threats to a person out of state via an online platform or email when the platform's or email service's servers are in the same state as the person making the threat, because those situations involve the same scenario that exists here: an out-of-state person is accessing, downloading, or viewing a threat stored on a server in the same state where the sender pressed the "send" button.  For example, in Hale's view, if a California resident posted a link to a video threatening to kill Michael Jordan on YouTube (whose servers are in California), and Jordan, who is in North Carolina, clicked on the link to view/download the threatening video, there is no federal crime, but if the California resident mailed a copy of the video directly to Jordan, there would be a crime.  Or, similarly, if a Virginia resident sent a threatening email to a Tennessee resident via a Virginia-based email platform that requires the recipient to log in to the email platform to retrieve the message, the defendant has not committed a federal crime.  None of that makes sense, and it is inconsistent with a logical understanding and the actual definition of the term "transmit."  Just as mailing a letter involves multiple steps and transfer points (pickup by one carrier, routing through a processing facility, transfer to a carrier charged with delivery, etc.) so too transferring a digital message may include multiple steps and transfer points.  By discharging a message into an online world for a recipient to receive, the sender's transmission of that message continues to the point where a recipient accesses and views it, even if it moves through multiple servers, pauses at a server, or in any way requires a viewer to "pull" the message to a particular terminus for viewing.

12

Accordingly, this Court should hold that as a matter of law, a threat crosses state lines either if: (1) a server forwards the threat to the recipient out of state; or (2) an out-of-state recipient is invited to view/download the threat and does so. Under either fact pattern, the threatening communication has crossed state lines because the recipient read/received the threat from out of state.

Here, there was abundant evidence — indeed undisputed evidence — that an out-of-state recipient was invited to download/read Hale's message and did indeed do so out-of-state. Relatedly, there was also abundant evidence that Johnson City, Tennessee's Ballad Health (through its employee Brad Folck) was the communication's actual recipient, the ultimate destination. Brad Folck/Ballad Health was not merely Hale's intended, yet illusory recipient, as might have been the case had Hale gone to Salesforce's website and submitted the same communication about Ballad Health employees to Salesforce via Salesforce's contact us page. Rather, substantial evidence demonstrates that Salesforce was merely the host (in other words, an intermediary incidental to the transmission, and in this case, a silent, entirely behind-the-scenes intermediary) and Hale's threat was addressed to, sent to, and actually received by Ballad Health in Tennessee.

### IV. Conclusion

As a matter of law, a threat that is electronically sent by a defendant to an *intra*state server, which is downloaded/read by the recipient from an *inter*state server, satisfies the jurisdictional requirement. That is exactly what happened in Hale's case and indeed Hale does not claim otherwise. Accordingly, the Rule 29 Motion should be denied and the verdict enforced.

13

Respectfully submitted,

ZACHARY T. LEE
Acting United States Attorney

/s/ Carrie L. Macon
Carrie L. Macon
Virginia Bar No. 95879
Assistant United States Attorney
180 West Main Street, Suite B19
Abingdon, Virginia 24210
(276) 628-4161
(276) 628-7399 (Fax)
USAVAW.ECFAbingdon@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on April 11, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all counsel of record.

/s/ Carrie L. Macon
Assistant United States Attorney
