# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:24-cr-00003 |
| ) | |
| AUSTIN LEE HALE ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM REGARDING AUSTIN HALE

The United States, by counsel, having considered the facts and circumstances of this case, and the sentencing factors set forth in 18 U.S.C. § 3553(a), respectfully submits this memorandum regarding the sentencing of Austin Hale. The government asks that the Court sentence Mr. Hale to a sentence within the guidelines range in this case, followed by three years of supervised release.

## PROCEDURAL HISTORY

In March of 2024, an Abingdon grand jury indicted Mr. Hale on one count of transmitting a threat in interstate commerce, in violation of 18 U.S.C. § 875(c). A jury convicted Mr. Hale on that count in February 2025. At trial, Mr. Hale moved for acquittal, which the Court denied on May 30, 2025. Sentencing is currently scheduled for June 5, 2025.

## LEGAL STANDARD

When sentencing a defendant, district courts must follow a four-step process: (1) properly calculate the advisory sentencing guideline range; (2) determine whether a sentence within that range and within statutory limits serves the factors set forth in 18

U.S.C. § 3553(a) and, if it does not, select a sentence that does serve those factors; (3) implement mandatory statutory limitations; and (4) articulate on the record the reasons for selecting a particular sentence and, if applicable, explain why a sentence outside of the advisory sentencing guideline range better serves the relevant sentencing purposes set forth in § 3553(a).  *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006); *see also United States v. Booker*, 543 U.S. 220, 260–65 (2005); 18 U.S.C. § 3553(a).

## APPLICABLE GUIDELINE RANGE

Mr. Hale's base offense level is 12.  Presentence Investigation Report (PSR) ¶ 16, ECF No. 215; USSG §2A6.1(a)(1).  The initial PSR, ECF No. 207, applied a 4-level reduction pursuant to USSG §2A6.1(b)(6).  The government objected to that reduction because (1) the evidence at trial showed that Mr. Hale's conduct involved deliberation and (2) because the evidence at trial showed Mr. Hale's threat resulted in a substantial disruption of Ballad Health's functions and services.  ECF No. 212.  Such evidence makes Mr. Hale ineligible for the 4-level reduction.  USSG §2A6.1(b)(6).  The government also objected to the initial PSR because it did not include a 4-level enhancement for the substantial disruption of public/business functions and services pursuant to USSG §2A6.1(b)(4).[1]

In the revised PSR, ECF No. 215, the Probation Office agreed that the 4-level reduction under USSG §2A6.1(b)(6) should not apply.  Specifically, the Probation Office determined that because Mr. Hale searched for Ballad Health facilities hours before he sent

---

[1] The government referred to business functions and services in its Objections, but recognizes its arguments also pertain to public functions and services.

the threat and the threat was written, Ex. 1 (Trial Tr.) at 69:21–72:5; Ex. 2 (Trial Ex. 1), Mr. Hale deliberated and is therefore ineligible for the reduction.

The Probation Office did not agree with the government that the 4-level enhancement under USSG §2A6.1(b)(4) should apply. However, the government submits that the enhancement is supported by a preponderance of the evidence. *United States v. Daggins*, No. 24-4069, 2024 WL 5040422, at *1 (4th Cir. Dec. 9, 2024) (discussing the standard for disputed guidelines enhancements). At least one court has found that the adjustment applies when increased security measures disrupted and diverted the work of multiple individuals and also delayed access to facilities. *United States v. Snipes*, 466 F. App'x 800, 802 (11th Cir. 2012).

Here, Ballad Health employees, including Chief Security Officer Ken Harr, undertook several investigatory steps after receiving Mr. Hale's threat, including communicating with the police and the FBI, searching for Mr. Hale in Ballad Health's patient system, and reviewing security reports. Ex. 1 (Trial Tr.) at 30–31. Employees, including hospital administrators, then implemented soft lockdowns at four Ballad Health facilities to protect patients and the public. *Id.* at 31. This meant limiting access at each facility to one or two doors, placing security officers at those entrances, implementing bag checks, and placing Mr. Hale's picture at the front desk and registration. *Id.* Thus, numerous Ballad Health employees, including Chief Security Officer Kenn Harr, hospital administrators, and others, dedicated time and resources to respond to the threat. The lockdowns affected members of the public by slowing down access to the four facilities in which Mr. Hale had previously been a patient and created a sense of fear among employees.

3

*Id.* at 33–34.  This is sufficient evidence to support the enhancement.  *See United States v. Anwar*, 741 F.3d 1134, 1137–38; *id.* at 1140 n.7.

Furthermore, although there is no evidence Ballad Health suspended medical services and no facilities closed, the evidence at trial demonstrated that Mr. Hale's threat did impact operations at multiple facilities.  That fact makes the disruption that occurred in this case more substantial than disruptions that only affect one building,  *see United States v. Carter*, 651 F. App'x 474, 476 (6th Cir. 2016) (per curiam) (affirming the application of the enhancement when a single district attorney's office had to "mostly shut down" from 10:30 through the end of the business day); *United States v. Dudley*, 463 F.3d 1221, 1226 (11th Cir. 2006) (affirming the enhancement applied when half a floor of a state courthouse closed for a couple hours and judicial business was interrupted), and is much more significant than it would have been had the threat simply resulted in employees exercising some limited degree of vigilance as is what happened in at least one case where a court declined to apply the enhancement.  *See United States v. Nissen*, 492 F.Supp.3d 1254, 1282 (D.N.M. 2020) (finding that an employee's words of caution to another employee and the placement of a defendant's picture at an affected office was insufficient to support the enhancement).  Moreover, the fact that Ballad did not implement lockdowns at all or a majority of its facilities does not mitigate the disruption to Ballad's security personnel and to the four facilities in which Mr. Hale had been a patient.

For these reasons, the government submits that USSG §2A6.1(b)(4) should apply, and Mr. Hale's Adjusted Offense Level, PSR ¶ 24, ECF No. 215, should be 16, not 12.  Given that Mr. Hale falls in Criminal History Category I, the applicable guidelines range

4

is 21 to 27 months' incarceration, which is within Zone D of the guidelines' sentencing table. Should the Court decline to apply the enhancement, Mr. Hale's guidelines range is 10 to 16 months, which is within Zone C of the guidelines' sentencing table. *Id.* ¶ 70.

## STATUTORY LIMITATIONS

The maximum term of imprisonment is five years. PSR ¶ 69, ECF No. 215 (citing 18 U.S.C. § 875(c)). Mr. Hale faces a fine of up to $250,000, and a period of supervised release of not more than three years. *Id.* ¶¶ 72, 77. There is a mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013.

## APPLICATION OF § 3553(a) FACTORS

Considering the factors set forth in 18 U.S.C. § 3553(a), the government asks that the Court sentence Mr. Hale to a sentence within the guidelines range.[2] A guidelines' sentence reflects the necessary balance of the § 3553(a) factors: in particular, the nature of the offense and the need to provide deterrence on one hand and Mr. Hale's history and characteristics on the other.

1.   *Nature and circumstances of the offense*

Having presided over the jury trial in this matter, the Court is familiar with the offense conduct. Mr. Hale's criminal conduct involved a threat to commit a mass shooting. That alone makes the nature of Mr. Hale's offense serious. Who Mr. Hale chose to target—unidentified hospital staff—only augments the severity. Hospital staff includes nurses, doctors, nursing assistants, receptionists, custodians, food service workers, and

---

[2] Mr. Hale has already served over nine months' custody in this case.

administrators. Hospitals are public places, where people experience some of the most significant moments of their lives, where patients go to seek live-saving medical treatment, new parents hold their children for the first time, and family members say their final goodbyes to loved ones. All of these individuals are impacted when a hospital is the target of a mass shooting threat. And in this case, the staff, patients, of family members at four Ballad Health facilities were affected by Mr. Hale's threat.

### 2. *Need to afford adequate deterrence*

Deterrence and the need to protect the public from further crimes is also an important factor in this case. Deterrence includes specific deterrence to Mr. Hale, to ensure he does not commit further crimes, including threatening to shoot or otherwise threatening to harm others in the future. General deterrence should also be considered in the imposition of Mr. Hale's sentence. Violent threats have become all too common in society, particularly mass shooting threats in public places.[3] The sentence imposed need not only punish Mr. Hale's conduct, but it must send a message that threatening to harm others will result in a significant penalty. *See United States v. Young*, 818 F. App'x 185, 194 (4th Cir. 2020) ("And as to general deterrence, the court concluded by noting that part of a court's sentence has to not only be to punish conduct, but it has to be to send messages." (cleaned up)).

---

[3] *See, e.g.*, https://www.campussafetymagazine.com/news/school-shooting-threats-skyrocket-on-social-media-after-apalachee-shooting/161787/ (discussing increase in school shooting threats).

6

### 3. *History and characteristics of the defendant*

Finally, the government recognizes (1) that Mr. Hale has a history of mental health issues and (2) Mr. Hale has no criminal history. The Court should certainly consider Mr. Hale's history in fashioning a sentence. However, government submits that a guidelines' sentence is appropriate because Mr. Hale's mental health issues do not entirely mitigate the other sentencing factors in this case, including the seriousness of the offense and the need to afford adequate deterrence. Moreover, Mr. Hale's lack of criminal history is already accounted for in the guidelines' range.

## RESTITUTION

Upon consultation with the victim, the government is no longer seeking restitution.

## SENTENCING WITNESSES

At this time, the government does not intend to call any witnesses, though the government respectfully reserves the right to call the case agent, the defendant, and representatives from Ballad Health, including Ken Harr. The government submits the Trial Transcript (Ex. 1) and Trial Ex. 1 (Ex. 2) as evidence.

## SUPERVISED RELEASE

Mr. Hale's conviction carries a period of supervised release of not more than three years. The government respectfully recommends that the Court impose a period of supervised release of three years.

## CONCLUSION

For the reasons stated herein, the United States recommends that the Court impose a guidelines' sentence in this case, followed by a period of supervised release of three years, which would be sufficient but not greater than necessary to address the factors set forth in 18 U.S.C. § 3553(a).

                    Respectfully submitted,

                    ZACHARY T. LEE
                    Acting United States Attorney

                    *s/Carrie L. Macon*
                    Carrie L. Macon
                    VSB No. 95879
                    Assistant United States Attorney
                    U.S. Attorney's Office
                    180 West Main Street, Suite B19
                    Abingdon, Virginia 24210
                    276-628-4161
                    276-628-7399 (fax)
                    USAVAW.ECFAbingdon@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on June 3, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all counsel of record.

/s/ Carrie L. Macon
Assistant United States Attorney
